### STERNE v. MERCHANTS' NAT. BANK.

### In re TAYLOR GRAIN CO.

(Circuit Court of Appeals, Eighth Circuit. August 20, 1914.)

#### No. 3949

1. BANKRUPTCY (§ 345*)—LIENS—CONFLICTING CLAIMS UNDER MORTGAGE.

Bankrupt corporation made an issue of $75,000 of bonds secured by mortgage on its property, all of which it delivered to a bank as security for present and future indebtedness. Later it made a new issue of $125,-000 to take up the first and other indebtedness, and its president took them to New York to negotiate. It then owed the bank $55,000, and with the bank's consent one of the first bonds of $15,000 was canceled and an indorsement of $5,000 made on another to show the true amount due thereon, and also, with the bank's consent, the president took such bonds with him; the uncanceled portion to be paid from the proceeds of the new issue. Having failed to effect a sale of the latter, the old bonds were returned to the bank, except the canceled one, which, without the first bank's knowledge, was pledged to intervener bank in lieu of other security which it then held, with the explanation that it had been canceled without authority. After the bankruptcy the mortgaged property was sold, and did not realize enough, after satisfying prior incumbrances, to pay the claim of the first bank. *Held*, that such bank was entitled to the entire security of the mortgage, and had not intentionally relinquished its right thereto; that intervener, which was put on notice by the condition of the canceled bond when it took the same and made no inquiries, was not an innocent purchaser, nor entitled to share in the proceeds of the mortgaged property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 534, 539, 540; Dec. Dig. § 345.*]

2. BANKRUPTCY (§ 455*)—APPELLATE PROCEEDINGS—MODE OF REVIEW.

An order of a court of bankruptcy allowing a claim of $500 or more as a secured claim, although it incidentally affects other liens on the same

property, is reviewable by appeal under Bankr. Act July 1, 1898, c. 541, § 25a, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 916; Dec. Dig. § 455.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

In the matter of the Taylor Grain Company, bankrupt. Appeal by W. E. Sterne, trustee, from an order allowing the claim of the Merchants' National Bank, intervener, as a preferred claim. Reversed.

The Merchants' National Bank of Topeka, Kan., presented a demand for an allowance as a secured claim against the estate of the Taylor Grain Company, in bankruptcy, praying that the same be paid in full out of the proceeds of sale of certain mortgaged property. The court had before that time made an order requiring the bank to present its claim within the time prescribed by law, and, because of its failure to do so, the referee refused to allow it at all, and, on a petition for review, the District Judge set aside the order of the referee and directed him to proceed to hear the claim of the bank on its merits. After a full hearing the referee disallowed the claim as a secured claim, and the District Judge, on another petition for review, reversed the judgment of the referee and ordered him to allow the demand of the bank as a secured claim, and directed its payment in full out of the fund in the possession of the trustee arising from the sale of the mortgaged property. From this last-mentioned order the trustee of the estate in bankruptcy prosecutes an appeal to this court.

The record before us consists of the final report of the referee disallowing the claim of the bank, the petition for review of that action, the order of the District Judge sustaining that petition and directing the referee to allow the claim, together with the opinion of the District Judge. Much evidence appears to have been taken by the referee, but none of it is brought here for our consideration. We must therefore determine the case on the facts found and stated by the referee. They are as follows:

Prior to November 1, 1904, the Taylor Grain Company had executed two mortgages conveying its real estate to secure the payment of (1) an indebtedness of $12,000, due to one French, and (2) an indebtedness of $10,000, due to the bank of Topeka, and on that day it executed another or third mortgage conveying the same property to a trustee to secure the payment of an issue of bonds aggregating the sum of $75,000, then executed by it, payable to the order of Davis, Welcome & Co., and by the latter indorsed in blank. All of these last-mentioned bonds were delivered to the Bank of Topeka as security for the payment of money then due or thereafter to become due from the grain company to that bank. In the summer of 1905 the total amount of that indebtedness was found to be $55,000. The grain company then executed another or fourth mortgage conveying the same real estate to a trustee to secure the payment of an issue of

$125,000 in bonds. Soon afterwards the grain company borrowed $2,-100 from the Merchants' National Bank, appellee herein, pledging, as security for its payment, some of the bonds of the last-mentioned, or $125,000, issue. The purpose of the grain company was to sell this issue of bonds, and with the proceeds pay off all prior mortgage indebtedness, and thereby constitute that issue a first lien upon its property. This purpose was made known to the president of the Merchants' National Bank, and he was also advised by the officers of the grain company that they hoped to sell the bonds in New York, and, as soon as they could do so, that bank could forward its bonds to New York and receive the $2,100 so borrowed. The president of the grain company went to New York for the purpose of negotiating a sale of the bonds. In order to do so it became necessary to make a showing that that issue constituted a first lien upon the property. He accordingly took with him an abstract and proper receipts and releases of the debts secured by the two first-mentioned mortgages, and also the entire issue of $75,000 of bonds, so that they might be canceled in partial satisfaction of the purchase price of the new issue. One of these bonds for $15,000, known as bond No. 7, had been canceled, while in the possession of the Bank of Topeka, and had been so marked on its face, and on another of the bonds payment of $5,000 had been indorsed, thereby reducing the amount secured by the mortgage of November 1, 1904, to $55,000, the exact amount of the then existing debt of the bankrupt company to the Bank of Topeka. That bank had consented to this cancellation and indorsement for the purpose of enabling the officers of the grain company to make a showing that the proceeds of sale of the bonds would be sufficient to pay off its indebtedness and secure a release of all prior incumbrances. Some objection was found to the terms and provisions of the mortgage, and for that reason the grain company was unable to make the sale, and concluded to make another mortgage containing satisfactory terms and provisions, to secure another issue of bonds and make another attempt to sell that issue. To accomplish this it became necessary to take up the few outstanding bonds of the prior issue pledged to the Merchants' National Bank. The president of the grain company, who then had in his possession bond No. 7, canceled for the purposes above specified, took it to the Merchants' National Bank and explained to its officers that, by reason of some dissatisfaction with the provisions of the mortgage, the $125,000 issue of bonds could not be sold, and that a new issue and a new mortgage were necessary, and that, in order to cancel the old issue, it became necessary to get possession of the few bonds held by their bank, and offered to deliver to the latter bank bond No. 7 as a substitute for the bonds then held by it as security for its debt of $2,100. The officers of the bank, upon inspection of that bond, called attention to its mutilated appearance, and were told by the president of the grain company that it had been canceled without authority of the board of directors, and that the officers of the company had re-signed it. The officers of the bank made no further inquiry, either of the officers of the grain company or of the Bank of Topeka, as to the circumstances under which the cancella-

tion of bond No. 7 had occurred, but took it and surrendered the bonds then held by them.

The grain company, having failed in its effort to negotiate a sale of its bonds, was, on the petition of its creditors, adjudged a bankrupt. Afterwards the Bank of Topeka made proof of its claim as secured by the mortgage of November 1, 1904, and the same was allowed in the sum of $57,125, which, with taxes and insurance paid, pursuant to the terms of the mortgage, amounted to $61,106. The mortgaged property was afterwards sold for $93,750. This amount was not sufficient to pay the claims amounting to $22,000 secured by the first and second mortgages and the claim of the Bank of Topeka of $55,000 secured by the third mortgage.

On this state of facts the Merchants' National Bank claims it is entitled to that portion of the proceeds of the sale of the mortgaged premises properly applicable to bond No. 7. In other words, that it is entitled to fifteen seventy-fifths of such proceeds because of its ownership of that bond. The trustee, acting on behalf of all parties interested, and particularly the Bank of Topeka, disputes this claim and contends that as the debt of $55,000 owed by the bankrupt company to the Bank of Topeka was secured by the entire issue of $75,000 of bonds, and as the entire proceeds of sale of the mortgaged property was not sufficient, after satisfying the two prior liens, to fully pay the debt of the Bank of Topeka, the latter was entitled to all such proceeds. The question thus presented is: Which bank, under the facts of this case, is entitled to the security which bond No. 7 afforded.

Mulvane & Gault and D. R. Hite, all of Topeka, Kan., for appellant.

Charles Blood Smith and Samuel Barnum, both of Topeka, Kan., for appellee.

Before HOOK, ADAMS, and SMITH, Circuit Judges.

ADAMS, Circuit Judge (after stating the facts as above). We are of opinion that the learned trial judge was right in ordering the referee to hear the case on its merits, notwithstanding the claim was not presented in time, but, in the view we take of the merits of the case, it is unnecessary to elaborate our views on this feature, and proceed at once to a consideration of the merits.

[1] The amount of the debt of the Bank of Topeka is not disputed. It was $55,000. Neither is there any dispute that this entire debt was intended to be secured by the mortgage of November 1, 1904. For that purpose, and that purpose only, was the entire issue of $75,000 of bonds, secured by that mortgage, turned over to the Bank of Topeka. That bank was thus vested with title to each and all of the bonds. Has it ever transferred that title to bond No. 7 to the Merchants' National Bank? This is the question.

The facts show that it parted with the possession of the bond for a particular purpose only: To enable the bankrupt company to negotiate a sale of a proposed new issue of $125,000 of bonds, and by so doing to raise money with which to pay all its debts, including, of course, the full amount of $55,000 due to the Bank of Topeka. That bank, to

facilitate the transaction, turned over the possession of all the bonds held by it ($75,000), including the canceled bond No. 7, to the president of the bankrupt company, to be used by him in the way and for the purposes stated, namely, to make a demonstration that upon the payment of $55,000, in addition to $22,000 secured by the first two mortgages, all prior liens would be discharged, and the contemplated mortgage would stand as the first and only incumbrance upon the property.

We fail to discover any act done or left undone by the Bank of Topeka disclosing an intention to surrender its claim to bond No. 7 or to transfer title thereto to the Merchants' National Bank. The worst that can be said is: That it delivered evidence of its security into the possession of the mortgagor, thereby empowering the latter to perpetrate a fraud upon the unwary. If this was done, equitable considerations might estop the Bank of Topeka from now claiming the benefit of that security as against any one innocently defrauded by any use the mortgagor might make of it. But the facts do not make a case of this kind. The last-named bank did a friendly act only. It delivered bond No. 7 to the mortgagor for a use, lawful in itself, and entirely consistent with the retention of its full security. That bond bore evidence on its face of its infirmity as a negotiable or transferable security. The facts reported by the referee do not disclose how or in what way the cancellation of the bond was made, but he states that, when the president of the mortgagor company took the bonds to New York, bond No. 7 "was canceled," and in several places in his report he states that it was marked "canceled," and he further states that the Merchants' National Bank knew of such cancellation, and that, when it was offered to its president as a substitute for the bonds desired to be taken up, he "called attention to the mutilated appearance of the bond," and was given some explanation of it, which will hereafter be referred to.

It seems quite clear that the Bank of Topeka never intended to surrender the security partially evidenced by bond No. 7 without simultaneously securing payment of its entire debt of $55,000. The bond was canceled and surrendered as a step in the progress of a legitimate negotiation to accomplish that purpose, and for no other purpose. There is no showing that it came into the hands of the Merchants' National Bank with the knowledge or consent of the Bank of Topeka. The intent, therefore, on the part of that bank to transfer title to the Merchants' National Bank does not appear. The only intent manifested was to facilitate the bankrupt company in negotiating a new issue of bonds for refunding purposes. The bankrupt company, after securing the cancellation of bond No. 7, did an unauthorized act when it delivered it to the Merchants' National Bank as security for the payment of its debt. It was guilty of an unwarrantable conversion, and by so doing did not destroy or impair the security originally taken and held by the bank of Topeka for the payment of its entire debt, unless it in some manner is estopped from asserting its claim to such security; but nothing of that kind appears.

The Merchants' National Bank took the bond which had not only been canceled but which bore evidence of mutilation on its face. It knew exactly what it was taking, and could not have been misled or defrauded. "Volenti non fit injuria."

But it is argued that the transaction amounted to a reissue by the mortgagor of a security once paid and satisfied. We are unable to give our assent to this contention. The case of Claflin v. South Carolina R. Co. (C. C.) 8 Fed. 118, is relied on by counsel for the appellee to sustain this contention. In that case Chief Justice Waite, presiding in the Circuit Court, had occasion to consider the subject of the satisfaction of a mortgage debt and the reissue of bonds once secured by the mortgage. We are unable to find in it, when properly understood, any warrant for the contention of counsel for appellee. It is true the Chief Justice said he could not doubt the power of the mortgagor to put out and keep out the entire issue up to the time the bonds became due; but he also said, in discussing the subject, that it was "a question of intention to be gathered from the language of the instrument, considered with reference to the surrounding circumstances and the subject-matter of the contract." In other words, the familiar rule of law that the intention of the parties must prevail applies to the reissue of negotiable securities. Applying this test to the present contention, the solution is clear. The bond was canceled, not with the intention of showing payment of any part of the debt due to the bank of Topeka, nor for the purpose of surrendering any part of its security. On the contrary, it was done as a step in the progress of negotiating a new issue of bonds, and at the same time securing payment of the entire debt of the Bank of Topeka. This intention would be thwarted if a reissue of one or more of the bonds could have been made without the knowledge or consent of the pledgee and its security, which, as the sequel shows, proved inadequate, be thereby impaired. There certainly was no intention on the part of the parties interested to reissue this bond as an obligation secured by the mortgage of November 1, 1904.

The referee found that the president of the bankrupt company stated to the officers of the Merchants' National Bank, in answer to a request for an explanation of the mutilated appearance of the bond, that it was canceled without authority of the board of directors of the grain company, and that the officers had re-signed it. The referee also found that the president of the grain company was the only officer who knew or assented to a cancellation of the bond. He does not find or state that the bond was ever in fact re-signed by any officers of the grain company, and we have no reason to know, from what appears in this record, that such was the fact. Upon this somewhat contradictory and unsatisfactory explanation the referee found that the Merchants' National Bank accepted the bond without making any inquiry at sources of information readily available to its officers, as to the circumstances under which the alleged cancellation was made. It took the bond with full knowledge of facts which discredited it as an existing or valid obligation of the bankrupt company. If the officers had exercised reasonable care and caution in the light of facts actually made known to them, they would have been led to accurate information concerning the rights of the Bank of Topeka in and to the bond. Such being the facts, the Merchants' National Bank does not occupy the position of a holder in good faith of a security such as entitles it to hold it as against the real owner.

[2] There is a motion to dismiss the appeal in this case which requires attention. Counsel for appellee argue that the judgment appealed from presents a matter of law reviewable, according to the provisions of section 24b of the Bankruptcy Act, only by an original petition to revise, and does not present "a controversy arising in bankruptcy proceedings" reviewable, according to the provisions of section 24a of the act, by appeal. In making this contention we think counsel fail to give sufficient consideration to the provisions of section 25 of the act, which provides among other things:

"That appeals as in equity cases may be taken * * * from a judgment allowing or rejecting a debt or claim of $500 or over."

What has already been said discloses that the decree appealed from is one allowing a claim to the Merchants' National Bank. It so states. It reads, after reciting the submission, as follows:

"It is therefore ordered that the decision of the referee herein finding against the said claim of the Merchants' National Bank be, and the same is hereby, reversed, and the said referee is directed to allow said claim of said the Merchants' National Bank against the fund in the possession of the trustee, arising from the sale of the property of said bankrupt."

The fact that the decree incidentally established a lien and affected the interests of the Bank of Topeka does not destroy the essential character of the proceeding, to establish a preferential claim against certain assets of the bankrupt. Century Savings Bank v. Robert Moody & Son, 126 C. C. A. 499, 209 Fed. 775. The case just cited is also authority for the proposition that the matter in judgment in this case is a "controversy arising in bankruptcy proceedings," and reviewable by appeal under the provisions of section 24a also.

The motion to dismiss the appeal must be denied, and the decree of the District Court allowing the claim of the Merchants' National Bank, and directing its payment in full, is reversed, and the cause remanded, with directions to take further proceedings not inconsistent with this opinion.